UNITED STATES of America, Appellee,

v.

Donald J. PAONE, Anthony M. Colombo, Joseph R. Rossi, a/k/a "The Hop", Thomas E. Marotta, Richard J. Marino, Rene Piccarreto, and Samuel J. Russotti, a/k/a "Red", Defendants-Appellants.

Nos. 84–1454, 84–1466, 84–1467, 84–1468, 84–1469, 84–1470 and 84–1471.

United States Court of Appeals, Second Circuit.

Argued Dec. 16, 1985.

Decided Feb. 5, 1986.

Rehearing and Rehearing En Banc Denied March 19, March 24, 1986.

388

William C. Bryson, Dept. of Justice, Washington, D.C. (Salvatore R. Martoche, U.S. Atty., W.D. of N.Y., Buffalo, N.Y., Douglas E. Rowe and Charles B. Wydysh, Dept. of Justice, Washington, D.C., on brief), for appellee.

Edward M. Chikofsky, New York City (James M. LaRossa, Paul B. Bergman, and LaRossa, Cooper, Axenfeld, Mitchell & Bergman, New York City, John F. Speranza, Rochester, N.Y., on brief), for appellant Paone.

Robert M. Murphy, Buffalo, N.Y., for appellant Colombo.

Herbert L. Greenman, Buffalo, N.Y. (Palmer, Greenman & Hurley, Buffalo, N.Y., on brief), for appellant Rossi.

Joseph M. La Tona, Buffalo, N.Y. (Condon, La Tona & Pieri, Buffalo, N.Y., on brief), for appellant Marotta.

Paul J. Cambria, Jr., Buffalo, N.Y. (Rochelle A. Reback, and Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N.Y., on brief), for appellant Marino.

Harold J. Boreanaz, Buffalo, N.Y. (Boreanaz, Baker & Humann, Buffalo, N.Y., on brief), for appellant Piccarreto.

John F. Humann, Buffalo, N.Y. (Boreanaz, Baker & Humann, Buffalo, N.Y., on brief), for appellant Russotti.

Before TIMBERS, MESKILL and PRATT, Circuit Judges.

TIMBERS, Circuit Judge:

Appellants Donald J. Paone, Anthony M. Colombo, Joseph R. Rossi, Thomas E. Marotta, Richard J. Marino, Rene Piccarreto, and Samuel J. Russotti appeal from judgments of conviction entered December 17 and 21, 1984 in the Western District of New York, Thomas C. Platt, Jr., *District Judge*, sitting by designation.

Following a one and one-half month jury trial, appellants were found guilty of substantive violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and of conspiracy to violate RICO, 18 U.S.C. §§ 1962(c) and 1962(d) (1982). Three of appellants' co-defendants

were acquitted by the jury. The district court sentenced each appellant to twenty years imprisonment on each of the two counts upon which they were convicted. Sentences were ordered to run consecutively for appellants Russotti, Piccarreto, Marino, Rossi, and Colombo. For appellants Marotta and Paone, the sentences were ordered to run concurrently.

We find that the principal issues raised on appeal which warrant discussion in this opinion are (1) whether the admission of co-conspirators' statements at the trial violated the Federal Rules of Evidence or the confrontation clause of the Sixth Amendment; (2) whether appellant Marotta was denied his right to conflict-free counsel because his retained lawyer had represented a government witness seven years earlier; (3) whether the New York corroboration of accomplice testimony requirement is incorporated in a RICO prosecution; and (4) whether the testimony of a Rochester policeman, which the court eventually struck, was so prejudicial as to require a reversal. Other subordinate claims are raised.

Several appellants have adopted by reference points raised in the briefs of their co-appellants pursuant to F.R.A.P. 28(i).

For the reasons set forth below, we affirm the judgments of conviction of each appellant upon each count upon which he was convicted.

### I.

We summarize only those facts believed necessary to an understanding of the principal issues raised on appeal.

Appellants' convictions arose from their participation in the conduct of a criminal enterprise in the Rochester, New York, area during an eleven year period. The indictment charged that between February 1971 and November 1982 appellants participated in a racketeering enterprise that extorted funds from gambling operations, and tried to prevent a rival group from encroaching on its control over gambling activities.

The predicate acts underlying the RICO charge encompassed a variety of serious offenses, including: the murder of Vincent Massaro; the murder of Thomas Didio; the attempted murders of rival leaders; attempted arson, extortion, and obstruction of justice. Former members of the enterprise testified on behalf of the government regarding these offenses and about appellants' positions in the crime organization. Testimony disclosed that, before gambling joints could operate in the Rochester area, permission had to be obtained from the organization. The gambling clubs paid the organization between $400 and $1800 each week, even though the organization did not provide services to the clubs.

One of the predicate acts included in this RICO indictment was the 1973 murder of Vincent Massaro. In 1977 appellants Russotti, Piccarreto, Marino and Marotta were convicted of this offense in the New York Supreme Court for Monroe County. After they began serving their sentences, it was discovered that sheriff's deputies had committed perjury during the trial. On motion of the Monroe County District Attorney, the judgment was vacated, the indictment was dismissed, and these four appellants therefore were released. During their limited incarceration, disputes arose over the leadership of the organization. Some members were expelled from the organization. A rival group vied for control over the gambling operations. This "war between the factions" led to the murder of rival Thomas Didio, the attempted murder of Rosario Chirico, the attempted murder of Sonny Celestino, and the attempted arson of Chirico's place of business. The activities of this rival group are described in our opinion in *United States v. Barton,* 647 F.2d 224, 228–29 (2 Cir.), *cert. denied,* 454 U.S. 857 (1981).

There of course was a great deal of other evidence, some of which we shall refer to in our discussion of the principal claims of error which follows.

### II.

The government presented its case primarily through the testimony of former

members of the enterprise. Appellant Paone claims that a number of co-conspirator statements concerning the activities of the enterprise were admitted in violation of the Federal Rules of Evidence and the confrontation clause of the Sixth Amendment. We disagree.

Under Fed.R.Evid. 801(d)(2)(E), a statement does not constitute hearsay if it is "offered against a party" and is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Appellant asserts that the court allowed government witnesses to testify about statements which did not comply with the timing element that a statement be made "during" the conspiracy and the motive element that a statement be "in furtherance" of the conspiracy.

■ Appellant's claim that the court should not have admitted such statements under Rule 801(d)(2)(E) because they were not made "during" the conspiracy rests on the erroneous premise that the indictment related only to criminal conduct which occurred after 1978. The indictment, however, sets forth acts beginning as early as 1971. The RICO indictment centered on appellants' conduct in extorting funds from gambling houses in Rochester. The predicate acts can be traced readily to this criminal design. Vincent Massaro was killed because of his disobedience and his displeasure with his share of the proceeds from the racketeering activity. Also, the rift within the organization, which led to the murders and attempted murders of rival group leaders, erupted during the incarceration of the Massaro murder participants. The gambling houses provided the funds for the operation of the enterprise. Statements made before 1977 relating to the collection of these funds clearly were made during and in furtherance of the conspiracy. We cannot say that the conspiracy began as late as 1977. We therefore reject the claim that the 1973 Massaro murder and the gambling operations antedated the conspiracy.

We also are not persuaded that the "in furtherance" requirement is as stringent as appellant urges.

Appellant points to portions of the testimony of government witness Thomas Pelusio as examples of narrative testimony that did not comply with the "in furtherance" requirement of Rule 801(d)(2)(E). Pelusio testified about a conversation concerning the Didio murder, a conversation in which he and some appellants participated. One appellant was reported as commenting on the manner in which Didio was killed, stating that it took only one bullet. Another appellant was reported as saying he wished that he had been present to watch Didio bleed. Other claims of error are based on the admission of testimony relating to 1975 and 1976 gambling operations and the 1973 Massaro murder.

■ To begin with, in order to comply with the "in furtherance" requirement, there must be evidence that establishes the conspiracy and that the defendant participated in it. 4 Weinstein & Berger, Weinstein's Evidence § 801(d)(2)(E)[01], at 801-244 (1985); *United States v. Lieberman,* 637 F.2d 95, 102 (2 Cir.1980); *United States v. Lyles,* 593 F.2d 182, 194 (2 Cir.), *cert. denied,* 440 U.S. 972 (1979). We are satisfied that the participation of each appellant in the instant conspiracy was established. Once a conspiracy is shown to exist, the "evidence sufficient to link another defendant to it need not be overwhelming." *United States v. Provenzano,* 615 F.2d 37, 45 (2 Cir.), *cert. denied,* 446 U.S. 953 (1980) (quoting *United States v. Head,* 546 F.2d 6, 9–10 (2 Cir.1976), *cert. denied,* 430 U.S. 931 (1977)).

■ Appellant also asserts that the narrative descriptions by the government witnesses did not satisfy the "in furtherance" requirement. In *United States v. Birnbaum,* 337 F.2d 490, 495 (2 Cir.1964), we recognized that mere idle chatter will not satisfy what is now Rule 801(d)(2)(E). Frequently, however, such statements may be admitted as declarations against penal interest, *Lieberman, supra,* 637 F.2d at 103, or under the state of mind exception to the

hearsay rule. *United States v. Cicale*, 691 F.2d 95, 103–05 (2 Cir.1982), *cert. denied*, 460 U.S. 1082 (1983). We also have recognized that the "in furtherance" requirement of Rule 801(d)(2)(E) is satisfied when a co-conspirator is apprised of the progress of the conspiracy, or when the statements are designed to induce his assistance. *United States v. Perez*, 702 F.2d 33, 37 (2 Cir.), *cert. denied*, 462 U.S. 1108 (1983); *United States v. Mangan*, 575 F.2d 32, 44 (2 Cir.), *cert. denied*, 439 U.S. 931 (1978). In light of those principles, we are satisfied that there was no error here.

■ Even if some of the informants' testimony did cross the line, appellant has not convinced us that the instant trial was tainted by any such testimony that might not have comported with Rule 801(d)(2)(E). This trial extended over a period of one and one-half months. In a trial of this length, we are mindful that the chance that a single error, assuming arguendo that such did occur, would be significant enough to cause reversal or mistrial is not as great as appellants would have us believe. "Experience teaches that while every additional day of trial increases the possibility of error, it correspondingly reduces the risk that any single error may have prejudicial effect upon the ultimate result." *United States v. Jones*, 766 F.2d 994, 1004 (6 Cir. 1985) (quoting *In re Beverly Hills Fire Litigation*, 695 F.2d 207, 227 (6 Cir.1982), *cert. denied*, 461 U.S. 929 (1983)).

■ In addition to his claim under Rule 801(d)(2)(E), appellant asserts that the admission of hearsay statements of co-conspirators violated his rights under the confrontation clause. The statements, according to appellant, did not contain sufficient indicia of reliability. Where co-conspirators' statements are so "crucial" to the prosecution and "devastating" to the defense, according to appellant, the confrontation clause is violated. We do not agree.

In *United States v. Puco*, 476 F.2d 1099, 1107 (2 Cir.), *cert. denied*, 414 U.S. 844 (1973), in commenting on a petition for rehearing, the Court made clear that, "[W]e did not and do not hold that a trial judge must find, before admitting a co-conspirator's declaration, that it is not 'crucial' to the Government's case or 'devastating' to the defense." The Court also stated:

"For future applications of *Dutton* [*v. Evans*, 400 U.S. 74 (1970)] to similar situations, we suggest that when a co-conspirator's out-of-court statement is sought to be offered without producing him, the trial judge must determine whether, in the circumstances of the case, that statement bears sufficient indicia of reliability to assure the trier of fact an adequate basis for evaluating the truth of the declaration in the absence of any cross-examination.... In most cases the determination that a declaration is in furtherance of a conspiracy—a determination that the trial judge now must make in every case for admissibility—will decide whether sufficient indicia of reliability were present."

*Id.* at 1107 (footnote omitted). We also have recognized that "a higher standard of reliability is imposed if the hearsay statements are 'crucial' to the Government's case". *United States v. Stratton*, 779 F.2d 820, 830 (2 Cir.1985) (citing *Dutton v. Evans*, 400 U.S. 74 (1970)). As the *Puco* court indicated, however, the cases in which the requirements of the hearsay rule do not provide sufficient indicia of reliability to satisfy the confrontation clause will be rare. *Id.* at 1107–08. "This is true because a declaration in furtherance of a conspiracy would be against the penal interest of the declarant." *United States v. Perez*, 702 F.2d 33, 37 (2 Cir.), *cert. denied*, 462 U.S. 1108 (1983). *See also United States v. Wright*, 588 F.2d 31, 38 (2 Cir. 1978), *cert. denied*, 440 U.S. 917 (1979) (facts did not support departing from general rule that statements in furtherance of conspiracy contain sufficient indicia of reliability to satisfy confrontation clause).

In our view, the facts of the instant case do not warrant our departing from our earlier decisions. We decline appellant's invitation to require more support for a co-conspirator's statement than is required by Rule 801(d)(2)(E). We hold that the

admission of co-conspirators' statements did not violate the confrontation clause. *See also United States v. Inadi*, 54 U.S.L.W. 4258, 4261 (U.S. March 10, 1986) (showing of declarant's unavailability not required for admission of co-conspirators' statements).

Appellant's third attack on the admission of co-conspirator declarations is his claim that the court made an inadequate *Geaney* finding. Under *United States v. Geaney*, 417 F.2d 1116 (2 Cir.1969), *cert. denied*, 397 U.S. 1028 (1970), where hearsay evidence in the form of a co-conspirator statement is admitted "subject to connection", the court must determine, when all the evidence has been received, whether the prosecution "has proved participation in the conspiracy, by the defendant against whom the hearsay is offered, by a fair preponderance of the evidence, independent of the hearsay utterances." 417 F.2d at 1120.

■ Appellant asserts that the court was required to make a specific determination with respect to each defendant as to when he joined the conspiracy and the exact non-hearsay evidence that tied him to the conspiracy. There is no such requirement. In *United States v. Perez, supra*, 702 F.2d at 36, we held that "an implicit *Geaney* ruling can be inferred in the trial judge's decision to receive the evidence and to deny a directed verdict of acquittal on the conspiracy charge." Here, the court made a finding that each defendant was a member of the charged conspiracy. There was abundant evidence linking each defendant to the conspiracy. This is sufficient under both *Geaney* and *Perez*.

We hold that the court correctly admitted the co-conspirators' statements.

### III.

■ Several former members of the conspiracy testified on behalf of the government. Midway through the trial, government witness Monachino, a former member of the enterprise, disclosed on cross-examination that in 1975 attorney Richard Miller, who was representing appellant Marotta at the instant trial, had represented him, Monachino, in obtaining bail when Monachino was arrested on unrelated charges in 1975. Marotta thereupon requested that Miller be discharged as his attorney in the instant case. Marotta sought permission to retain new counsel. The court denied both requests after conducting an exhaustive colloquy with Monachino. Marotta claims that, since his retained attorney, seven years earlier, had represented a government witness who was testifying against Marotta in the instant case, his Sixth Amendment rights were violated. Marotta asserts that the disclosure that the same attorney at widely separated times had represented two men, each of whom was a member of the alleged conspiracy, so prejudiced the proceedings as to require a reversal and new trial. We disagree.

■ While a defendant has a right to counsel of his choice under the Sixth Amendment, it is not an absolute right. *United States v. Ostrer*, 597 F.2d 337, 341 (2 Cir.1979). *See In Re Grand Jury Subpoena Served Upon John Doe, Esq. (SLOTNICK)*, 781 F.2d 238, 250 (2 Cir. 1986). Absent a conflict of interest, a defendant in a criminal case does not have the unfettered right to retain new counsel, particularly after trial has commenced. In determining whether to allow a defendant to retain new counsel, the court must consider whether a severance would then be required, the risks and problems associated with the delay, and whether substitutions would disrupt the proceedings and the administration of justice. *McKee v. Harris*, 649 F.2d 927, 931 (2 Cir.1981), *cert. denied*, 456 U.S. 917 (1982).

■ We recognize that a defendant in a criminal case is entitled to conflict-free representation. *Cuyler v. Sullivan*, 446 U.S. 335, 349–50 (1980). For the reasons set forth below, however, we find that, if there was any conflict in the instant case, it was abated during the trial.

First, the government did not realize that attorney Miller previously had represented Monachino until the day before Monachino testified. Miller's representation of Monachino had been ten years earlier and was very limited. Miller had shared office space with Monachino's retained lawyer and merely had aided him in applying for bail. Monachino's need for legal representation at that time stemmed from criminal charges wholly unrelated to the instant case. Miller had not represented Monachino in any way since 1975. Second, Monachino waived any attorney-client privilege he had. As Marotta concedes, Miller subjected Monachino to a "disastrous" cross-examination. Third, following a detailed inquiry into the extent of the relationship between Monachino and Miller, the court carefully informed the jury of the limited nature of the prior representation. The court also explained to the jury that there was a limited universe of criminal defense lawyers in the geographic region and that such past representation was not unusual.

The situation here was not nearly as problematic as in the cases which appellant cites where we held that a defendant was denied his right to effective assistance of counsel. *E.g., United States v. Cancilla*, 725 F.2d 867, 870 (2 Cir.1984) (attorney who had engaged in similar criminal conduct lacked incentive to conduct a vigorous defense); *Solina v. United States*, 709 F.2d 160, 167–69 (2 Cir.1983) (defendant represented by unlicensed attorney).

Particularly in light of the trial court's careful instruction to the jury, Monachino's waiver of the attorney-client privilege, and the absence of any prejudice to Marotta, we hold that the court ruled correctly in refusing to allow Marotta to discharge his trial counsel and to retain new counsel midway through the trial that lasted one and one-half months.

### IV.

■ Six of the predicate acts underlying the RICO indictment were New York state law offenses of murder, attempted murder and attempted arson. Appellant Marino claims that, since New York state law requires corroboration of accomplice testimony to prove these offenses, such acts did not comply with the definition of "racketeering activity" under RICO. We disagree.

The RICO statute, 18 U.S.C. § 1961(1)(A) (1982), defines "racketeering activity" as "any act or threat involving murder, kidnaping, gambling, arson, robbery, extortion, or dealing in narcotic or other dangerous drugs, which is *chargeable under State law* and punishable by imprisonment for more than one year". (emphasis added). Appellant claims that, if an accused cannot be charged in the New York state courts for these offenses in the absence of accomplice testimony corroboration, he cannot be charged under the federal RICO statute. The court overruled appellant's claim in this respect at the close of the government's case and during the pre-charge conference.

We are satisfied that Congress did not intend to incorporate the various states' procedural and evidentiary rules into the RICO statute. The statute is meant to define, in a more generic sense, the wrongful conduct that constitutes the predicates for a federal racketeering charge. *United States v. Licavoli*, 725 F.2d 1040, 1047 (6 Cir.), *cert. denied*, 104 S.Ct. 3535 (1984). To adopt appellant's reading of "chargeable" would result in precisely the same criminal act, proscribed by the laws of two states, being the basis of a RICO violation in one state but not in the other—simply because of differences in what are essentially procedural rules. As in *United States v. Bagaric*, 706 F.2d 42, 62–63 (2 Cir.), *cert. denied*, 464 U.S. 840 (1983), we refuse to sanction such inconsistent results. Other courts' interpretations of § 1961(1)(A) support our interpretation of the statute. *See, e.g., United States v. Brown*, 555 F.2d 407, 418 n. 22 (5 Cir.1977), *cert. denied*, 435 U.S. 904 (1978) (rejecting Georgia's accomplice testimony corroboration requirement in a RICO prosecution); *United States v. Licavoli, supra*, 725 F.2d at 1047, and cases cited therein (even

though Ohio law precludes separate punishment for conspiracy to murder and murder, each can serve as separate predicate act in a RICO prosecution).

We hold that the district court correctly ruled that the New York corroboration of accomplice testimony requirement is not incorporated in a RICO prosecution.

### V.

■ Officer Pecora of the Rochester police department was called as a government witness at trial. Pecora's testimony included relating his June 18, 1978 conversation with appellant Marotta. Pecora had relayed to Marotta a description of the "mob war" in the Rochester area, based on descriptions which two informants had provided. Pecora testified that he asked Marotta to comment on the informants' stories. Pecora then repeated in court Marotta's reaction to the informants' stories. Pecora's testimony also described appellants Russotti and Piccarreto as leaders of the organization. This hearsay testimony by Pecora on direct examination included the following:

"Q. What else did you tell him?

A. I also told Mr. Marotta that the first man stated that Sammy Gingello had declared himself over Samuel Russotti and Rene Piccarreto, and that there was no more equal power.

I also told him that the man had stated to me that at approximately two weeks after the murder of Sammy Gingello that the A and the B team had a meeting, and it was suggested that this city be split into two parts with the river—or Main Street being the dividing line; that the A team found this acceptable, but the B team did not, and was primarily opposed to Sonny Celestino, and nothing was resolved at this meeting.

The bombings continued, and—both the A and B team became disorganized. He also stated that the A team was losing its hold by not being effective in taking care of the B team. Also stated to—

. . . .

Q. What did you tell him the second man had stated to you?

A. The second man stated that in regards to the beating incident, that the whole problem would have ended with the beatings, but then the pipe bomb was found on Clifford Avenue and that started it all over again.

He stated that—the second man stated that the power structure of Samuel Gingello, Red Russotti and Rene Piccarreto was the same when they got out of jail as it was when they went to jail.

He also stated that the A team was suffering financially as a result of the bombings, and they were having difficulty—the A team was having difficulty—difficulty locating members of the B team.

He also stated that the problem would not be resolved unless at least these people are eliminated.

He also stated that members of the motorcycle club were probably the people that associated with Thomas Torpey.

After telling him these things, Mr. Marotta responded only by saying that he agreed with—with the beatings, what happened in the beatings, but he said there was—he was not sure that exactly happened because he was in jail at the time.

He did say that—those members, those men, were told that—

. . . ."

The court first admitted the testimony tentatively, subject to later consideration. The court thereafter considered striking the testimony completely if Pecora did not disclose the identity of the informants. The court next decided to instruct the jury that the testimony was admissible against Marotta only. When Pecora was recalled for cross-examination, the court finally instructed the jury to disregard completely the controversial testimony of Pecora. Pecora refused to disclose the identity of the informants and was held in contempt.

Pecora appealed to this Court from the order holding him in civil contempt. We

vacated the contempt order, holding that Pecora was not required to disclose the identity of the informants since the court had struck Pecora's testimony. *United States v. Russotti,* 746 F.2d 945, 950 (2 Cir. 1984). We observed that at that point in the trial the record did not establish such prejudice as to require a retrial because of the Pecora episode. *Id.* Our careful examination of the entire record, including events subsequent to Pecora's being held in contempt, satisfies us that nothing in the Pecora episode warrants disturbing the judgments of conviction.

Appellant Russotti, joined by several of the other appellants, argues that, even though the court struck the testimony eventually, its disclosure was so prejudicial as to require a reversal. Appellants assert that the jury was left with the impression that the informants existed, that what they said was true, and that the officer's reliance on the unnamed informants gave the government's witnesses who were former members of the enterprise increased credibility.

Appellants rely on *Bruton v. United States,* 391 U.S. 123 (1968), for the proposition that their inability to cross-examine the sources of Pecora's testimony violated the confrontation clause. In *Bruton,* the jury had been asked to apply a confession obtained after arrest to the hearsay declarant but not to his co-defendant. The issue before us is whether the court's instruction to the jury to disregard completely the testimony relating to the June 18 conversation was sufficient to obviate any prejudice to appellants.

Appellants Russotti and Piccarreto claim particular prejudice because they were identified as leaders in the organization. Other witnesses, however, testified as to the conduct and leadership positions of these same appellants in the organization. We are satisfied that the claimed prejudice was not as "devastating" as appellants assert. Moreover, unlike the situation in *Bruton,* the jury was not asked to apply the testimony to only some appellants, nor

were these hearsay declarations made "post-arrest".

While we do not applaud the sequence of events here, we are mindful that occasions do arise, particularly during the course of a long trial, where, on balance, it is in the interest of the fair administration of criminal justice that a jury be given corrective instructions. We hold that this is such a case. *See United States v. Nixon,* 779 F.2d 126, 133 (2 Cir.1985). The jury was not asked to perform olympian mental gymnastics. Indeed, the court's expression of grave concern over this testimony during the trial may well have redounded to the benefit of appellants because the court emphasized to the jury the importance of disregarding the testimony entirely.

We hold that the court's corrective instruction to the jury, together with the factors referred to above, obviated any prejudicial impact of Pecora's testimony upon any of the appellants. We hold that the court did not err in any respect in its handling of the Pecora episode, including its refusal to grant appellants' motion for a mistrial.

We believe it is appropriate and necessary to add a word of caution to the government. Preparation for and conduct during this long and somewhat complicated case no doubt were taxing on both the prosecution and defense counsel, as well as on the court. The government's proffer of Pecora's testimony, however, more resembled risk-creating improvisation than fine-tuned choreography. The government should have avoided this potential for prejudice by screening the testimony with appellants' counsel and the court before trial rather than plunging ahead with such hearsay testimony. After carefully reviewing the record, we believe that the government did not intentionally mishandle the proffer of Pecora's testimony. The scrutinizing trial judge abated the potential prejudice. He displayed the patience of Job and the wisdom of Solomon throughout. We nevertheless reiterate the admonition to government counsel which Judge Newman stated in one aspect of this very case, *Unit-*

ed States v. Russotti, supra, 746 F.2d at 950, except that we underscore that admonition. United States attorneys are charged with knowledge of the decisions of this Court in criminal cases. Any disregard of our admonition in future cases will be dealt with appropriately.

## VI.

Appellants have raised other subordinate claims of error which we do not believe merit discussion.

For example, appellants' claim that the inclusion of the 1973 Massaro murder as a predicate act violated the double jeopardy clause of the Fifth Amendment was rejected by us in an interlocutory appeal. *United States v. Russotti*, 717 F.2d 27 (2 Cir. 1983), *cert. denied*, 465 U.S. 1022 (1984). We hold that there is no reason to disturb that decision.

Other subordinate claims of error include whether the predicate acts under RICO were charged and proven adequately; whether the court abused its discretion in denying mid-trial requests for delay; whether the court properly excluded prior sworn testimony of two appellants; whether the court properly refused to allow appellant Marotta's attorney to be called as a witness; whether the government used immunized testimony in its prosecution; and whether consecutive sentences could be imposed for conspiracy and substantive violations of RICO.

We have carefully examined all claims of error raised by all appellants and we find none has merit.

## VII.

To summarize: We hold that the admission of the co-conspirators' statements violated neither the requirements of Fed.R. Evid. 801(d)(2)(E) nor the confrontation clause of the Sixth Amendment; the limited representation of a government witness by appellant Marotta's retained counsel did not violate Marotta's right to conflict-free counsel; appellants' argument that the New York corroboration of accomplice tes-

timony requirement is incorporated in the RICO definition of racketeering activity is without merit; the court's limiting instruction to the jury was sufficient to obviate any prejudice resulting from Officer Pecora's hearsay statements; and all of appellants' other claims of error, having been carefully considered, are without merit.

Appellants were convicted after a one and one-half month trial on the basis of overwhelming evidence of extraordinarily serious offenses committed over a period of time beginning fifteen years ago. We order that the mandate issue forthwith.

Affirmed.