UNITED STATES,

v.

DISTRICT COUNCIL OF NEW YORK CITY AND VICINITY OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, et al., Defendants.

No. 90 Civ. 5722 (CSH).

United States District Court, S.D. New York.

Sept. 8, 1993.

Marla Alhadeff, Thomas A. Zaccaro, Gideon A. Schor, Edward Scarvalone, Steven M. Haber, U.S. Attorney's Office, New York City, for U.S.

Charles G. King, Fried, Frank, Harris, Shriver & Jacobson, New York City, for Dist. Council.

George Santangelo, Santangelo, Santangelo & Cohen, New York City, for Frederick Devine.

Lawrence Sandak, Sive, Paget & Riesel, P.C., New York City, for Paschal McGuinness.

Henry Putzel, III, New York City, for Robert Cavanaugh.

Patrick Burke, Burke & McGlinn, Suffern, NY, for George Albert.

Charles Haydon, Dublirer, Haydon, Straci & Victor, New York City, for Vincent DiNapoli.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This case is before the Court on defendants' *in limine* objections to certain evi-

dence the Government intends to introduce at trial. Defendants essentially assert three objections: (1) the testimony of certain witnesses constitutes inadmissible hearsay; (2) no adverse inferences should be drawn against the District Council from the Fifth Amendment invocations of non-party witnesses; and (3) the Government should be precluded from offering the testimony of three witnesses.

## I. *Admission of Hearsay as Statements of Co–Conspirators*

The Government seeks to introduce the testimony of Jesse Hyman, William Murtha and Salvatore Gravano. These witnesses will apparently testify about statements made to them regarding defendant Devine's participation in illegal activities. The District Council objects to this testimony on the ground it constitutes inadmissible hearsay.

The Government offers two bases for allowing the proffered testimony: that it is admissible as the statements of co-conspirators, *see* Fed.R.Evid. 801(d)(2)(E), and it is admissible as statements against interest, *see* Fed.R.Evid. 804(b)(3).

### A. *Statements of Co-conspirators*

The co-conspirator statement rule provides:

(d) *Statements which are not hearsay.* The statement is not hearsay if ...

(2) *Admission by party-opponent.* A statement is offered against a party and is ...

(E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

The District Council challenges the admission of the testimony under this rule, arguing (1) there is insufficient evidence of a conspiracy; (2) there is insufficient evidence that the conspiracy alleged includes Devine; (3) the conspiracy described by the Government to support this proof is dramatically different

from that alleged in the complaint; and (4) the statements offered were not made in furtherance of the alleged conspiracy. *See United States v. Bourjaily,* 483 U.S. 171, 175, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987).

■ As a threshold matter, the Court must determine that a conspiracy existed, and that it involved the declarant and the party against whom the statement is offered[1]. *See* Fed.R.Evid. 104. Defendants claim that neither of these conditions is satisfied.

■ Defendants' objections are better addressed on a full evidentiary record. Accordingly, I will admit the contested statements subject to the receipt of other evidence of the conspiracy alleged. This practice was approved by the Second Circuit in *United States v. Cota,* 953 F.2d at 758. At the close of the Government's case, the defendants may renew their arguments that the testimony should be stricken on the ground that the Government failed make the necessary threshold showings.

Additionally, the court will reserve judgment on defendants' objections that the proffered statements were not made in furtherance of the conspiracy. When the details of the conspiracy are fleshed out, the Court can make a more competent judgment as to whether the statements offered are in furtherance of the conspiracy, or mere "idle chatter". *See United States v. Paone,* 782 F.2d 386, 390 (2d Cir.1986).

■ Defendants' argument that the evidence should be excluded because the conspiracies alleged here differ from the conspiracy identified in the complaint is unavailing. To admit testimony under Rule 801(d)(2)(E), there need not be a conspiracy count in the complaint or in the indictment. *See United States v. Stratton,* 779 F.2d 820, 829 (2d Cir.1985); 4 Weinstein & Berger, *Weinstein's Evidence* (1992), at 801–302–03 ("Indeed, there need be no conspiracy count in the complaint or indictment to trigger

---

1. *Bourjaily* holds that the hearsay statements themselves may be considered in determining whether a conspiracy exists. 483 U.S. at 175, 107 S.Ct. at 2778. And "once a conspiracy is established, only slight, even circumstantial evi-

dence is needed to link [a defendant] with it." *United States v. Cota,* 953 F.2d 753, 758 (2d Cir.1992), citing *United States v. Ciambrone,* 787 F.2d 799, 806 (2d Cir.1986).

availability of this rule for the admission of statements."). If the Government can avail itself of the co-conspirator exception even if no conspiracy whatsoever is alleged in its pleading, it may do so where the conspiracy justifying admission of the declarations is different from that alleged. District Council cites no authority to the contrary.

Jude Weinstein summarizes the manner in which such declarations may be proved at trial: "So long as the declarant and the party against whom the statement is offered in court were members of a conspiracy at the time the statement was made, any witness who heard the statement may recount it at trial, whether the statement was made to a conspiracy member or not, and regardless of whether the witness was a member of a conspiracy." *Id.*, at 801–305.

### B. *Statements Against Interest*

The Government argues that even if the hearsay testimony of Hyman, Murtha and Gravano is not admissible as co-conspirator statements, it may be admitted as statements against interest. *See* Fed.R.Evid. 804(b)(3). Since the Court has agreed to hear the testimony subject to further proof on the existence of a conspiracy, the Court need not decide whether the statements would be admissible as statements against interest. If, at the close of the Government's case, District Council successfully moves to strike the testimony on the ground that the Government failed to show that the statements were admissible pursuant to Rule 801(d)(2)(E), the Government may renew its application to admit the testimony pursuant to the statement against interest rule.

### II. *Statements Against Interest Under Rule 804(b)(3)*

The Government has indicated that it intends to offer into evidence the out-of-court statements of several contractors who have admitted paying off union officers. According to the Government, the statements consist of either sworn testimony before a state grand jury made under a grant of immunity, or memoranda of interviews with the contractors prepared by law enforcement officers. The District Council objects on the ground that this testimony constitutes hearsay. The Government argues that the testimony is admissible under Fed.R.Evid. 804(b)(3).

Rule 804(b) of the Federal Rules of Evidence provides in pertinent part:

(b) *Hearsay Exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(3) *Statement Against Interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

The District Council contends that the testimony offered by the Government does not qualify under this rule, challenging both the witnesses' "unavailability", and whether the statements made were actually against the declarants' interests.

■ The Government claims that the witnesses are unavailable because the witnesses in question have all invoked their Fifth Amendment privilege, or may be expected to do so. Fed.R.Evid. 804(a)(1) provides that a declarant is unavailable if "exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement." District Council argues that it is fundamentally unfair to grant witnesses immunity in order to procure a statement and then refuse immunity so as to make them "unavailable" and admit the earlier statement into evidence, thereby precluding the defendants from cross-examining the witness.

■ If the surrounding circumstances demonstrate unfairness, the remedy lies in an order by the trial judge requiring the Government to immunize the witnesses or suffer certain consequences. Typically, the issue arises in the context of a witness a criminal defendant wishes to call on the defense case.

The Second Circuit rules are that the fifth amendment does not require "that defense

witnesses immunity must be ordered whenever it seems fair to grant it," *United States v. Turkish,* 623 F.2d 769, 777 (2d Cir.1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981); and that "immunity remains 'preeminently a function of the Executive Branch'", *United States v. Salerno,* 937 F.2d 797, 807 (2d Cir.1991), quoting *Turkish* at 776.

*United States v. Bahadar,* 954 F.2d 821, 825–26 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 149, 121 L.Ed.2d 101 (1992), contains a recent review of pertinent cases in the Second Circuit and elsewhere. While adhering to these general principles, *Bahadar* also upholds the district court's power to issue directives to the government in appropriate circumstances. Thus, the *Bahadar* court said at 826: "This circuit has followed the carrot-and-stick approach, leaving the immunity decision to the executive branch, but interposing the judicial power to subject the government to certain choices of action." The court found language illustrative of that principle in *Salerno* at 807–808: "the government is in no way *required* to grant use immunity to a witness called by the defense; it is simply left with a series of choices." (emphasis in original). *Bahadar* derives from other cases the principle that " 'extraordinary circumstances' might require the government to confer use immunity on a defense witness." *Id.,* at 826 (citations omitted).

The Second Circuit employs a three-part test for requiring the government to grant defense witnesses immunity at the risk of dismissal of the indictment.

First, the district court must find that the government has engaged in discriminatory use of immunity to gain a tactical advantage or, through its own overreaching, has forced the witness to invoke the fifth amendment. Second, the witness's testimony must be "material, exculpatory and not cumulative". Third, the testimony must be unobtainable from any other source.

*Bahadar* at 826 (citing cases).

The convicted defendant in *Bahadar* lost his appeal on this issue because the witness's "invocation of the fifth amendment was not the result of a discriminatory use of immunity by the government, nor of any other prosecutorial overreaching." *Id.* Thus, the defendant failed to clear the first hurdle of the Second Circuit's three-part test.

The case at bar is not a criminal case; and immunization of the contractor witnesses would not make available to the defendants witnesses they would wish to call on their case. Rather, the effect of immunizing these witnesses would be to enable defense counsel to cross-examine them on important declarations which go to the heart of the government's allegations of bribery and corruption.

These differences do not affect the basic principle involved, which is one of fairness. If it should appear that with respect to a particular witness, the government "has engaged in discriminatory use of immunity to gain a tactical advantage, or, through its own overreaching, has forced the witness to invoke the fifth amendment" (the first part of the test), I will entertain a defense application that the government be required to immunize the witness or forego his out-of-court declarations. But resolution of the issue must await a trial record. It is not appropriate to do so on rhetorical exchanges in the briefs.

■■■ Assuming that the contractor witnesses' invocations of the fifth amendment are not tainted by government overreaching, the witnesses are "unavailable" under Rule 804(b); and the admissibility of their out-of-court declarations depends upon whether they were against the declarants' interest under Rule 804(b)(3). Statements may fall within the rule if they are contrary to a declarant's penal, pecuniary or proprietary interest.

■■ The government's brief assumes for purposes of its argument (thus stopping just short of a formal concession) "that the contractors' statements did not subject them to criminal liability," p. 26. Rather, the government says that these statements subjected the contractors to risk of pecuniary loss and civil liability through (1) debarment from public contracts by state and federal authorities; (2) civil liability under the Taft–Hartley laws; and (3) civil RICO liability.

District Council contends that the contractors' statements, made under grand jury grants of immunity or while cooperating with law enforcement officers, were primarily motivated by a desire to escape criminal prosecution. In such circumstances, the argument proceeds, the declarations should be regarded as self-serving rather than disserving, and accordingly fall outside the rule. District Council says that these witnesses were only secondarily concerned, if at all, about the effect the declarations might have on their pecuniary or proprietary interests.

I will accept for this analysis that the contractors' declarations may be regarded as self-serving in some aspects and disserving in others. As Judge Weinstein observes, Rule 804(b)(3) is silent about the "troublesome" problem of "[w]hat should be done with statements partially against interest and partially favorable." *Op. cit.* at 804–136. Cases construing the rule tend to assess "the statement as a whole to determine whether the rationale for the exception is satisfied," *id.* at 804–138. That analysis may lead to exclusion of the statements. *See, e.g., United States v. Williams,* 738 F.2d 172, 177–78 (7th Cir.1984) (affirming exclusion of witnesses's statement notwithstanding the fact that it exposed him to state theft charges, where same statement exculpated him from more serious mail fraud charges); *United States v. Ashfield,* 735 F.2d 101, 109–10 (3rd Cir.1984) (in prosecution for attempted income tax evasion, statement of deceased accountant that defendant's treatment of loan repayments was due to accounting error was not admissible since it was not objectively contrary to his interest, the accountant's firm never having assumed responsibility for the error, and the statement having been made after the firm began representing defendant in the IRS investigation).

Judge Weinstein generally favors the admission of such evidence, leaving it to the trier of the facts to evaluate its several elements. His text says at 804–138:

There is no reason why, when admitting, the Court should not explain to the jury the theory upon which this hearsay is being introduced so that it can evaluate more accurately the probative force of the dis-serving, neutral, and self-serving elements of the statement.

At a bench trial, the trial judge can explain those propositions to himself, and perform the same evaluative function.

█ It is generally recognized that the admissibility and the probative value of purported declarations against interest depend upon the particular circumstances. The Advisory Committee's Notes observe:

Whether a statement is in fact against interest must be determined from the circumstances of each case. Thus a statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest. See the dissenting opinion of Mr. Justice White in *Bruton.* On the other hand, the same words spoken under different circumstances, *e.g.,* to an acquaintance, would have no difficulty in qualifying.

It follows from considerations such as these that the dispute as to whether the declarations are sufficiently against interest to satisfy Rule 804(b)(3) can be decided only upon a trial record, and not on a motion *in limine.* That may not always be true of proffered statements against interest, but it is true of the declarations in this case. At trial the parties may fully explore the circumstances under which these declarations were made, and whether there is a basis for inferring that the contractors knew that the statements were against the interests relied upon by the government at the time the declarations were made. The latter circumstance is pertinent in light of the general rule that "[h]earsay under the declaration against interest exception is unreliable unless the declarant is aware at the time of making the statement that it is against his interest." *Robert v. City of Troy,* 773 F.2d 720, 725 (6th Cir.1985). That is because, as the Advisory Committee's Notes recognize, "[t]he circumstantial guaranty of reliability for declarations against interest is the assumption that persons do not make statements that are damaging to themselves unless satisfied for good reason that they are true." (citing *Hileman v. Northwest Engineering Co.,* 346

F.2d 668 (6th Cir.1965). The rationale does not apply unless the declarants knew that the statements were damaging to themselves when made.

For all the foregoing reasons, decision on admissibility of the contractor witnesses' out-of-court declarations is reserved to the trial. No present view is intimated as to the weight, if any, that will be given these declarations if admitted.

III. *The Drawing of Adverse Inferences from the Fifth Amendment Invocations of Non–Party Witnesses*

At trial, the Government seeks to offer into evidence the Fifth Amendment invocations of a number of non-party witnesses. The Government argues that the Court may draw adverse inferences against the defendants from the Fifth Amendment invocations of these non-party witnesses. The District Council vehemently objects.

█ The Fifth Amendment provides that "no person ... shall be compelled in any criminal case to be a witness against himself." This privilege applies in civil cases as well as in criminal cases, and protects a witness as fully as it does one who is also a party defendant. *See McCarthy v. Arndstein*, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924). The Supreme Court views the assertion of the privilege in the civil context differently than in the criminal context. While a prosecutor is prohibited from commenting on the accused's silence, *see Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the Supreme Court held in *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1557, 47 L.Ed.2d 810 (1976), that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them."

District Council does not dispute that a court may draw an adverse inference against a party from that party's invocation of the Fifth Amendment. District Council contends, however, that it is improper to draw an adverse inference against a party based on the fifth amendment invocations of non-parties. In support of this argument, it cites

*Brenner v. World Boxing Council*, 675 F.2d 445, 454 n. 7 (2d Cir.1982), *cert. denied*, 459 U.S. 835, 103 S.Ct. 79, 74 L.Ed.2d 76 (1982), which held that the invocation of the Fifth Amendment by a non-party witness does not permit the drawing of an adverse inference against any party to the action.

The Government offers two theories in support of its contention that one may draw adverse inferences against a party based on the Fifth Amendment invocation by non-parties. First, it argues that the Fifth Amendment invocations of employees or agents may be offered against the employer or principal. Second, it argues that the Fifth Amendment invocations of co-conspirators may be used against other conspirators in a civil case.

█ A number of courts have held that the Fifth Amendment invocation of an employee was proper and competent evidence against an employer in civil litigation. In *Brink's, Inc. v. City of New York*, 717 F.2d 700 (2d Cir.1983), plaintiff, an armored car carrier, sued New York City alleging it breached a contract to collect money from parking meters. The City counterclaimed, alleging that the guards hired by Brink's had stolen substantial amounts of money from those meters. The district court (Weinfeld, J.) allowed the City to call the Brink's employees to the stand where they invoked their fifth amendment privilege. On appeal, the Second Circuit affirmed the district court's decision to permit the jury to consider the fifth amendment invocations.

Two other circuits have reached the same result. In *RAD Services, Inc. v. Aetna Casualty and Surety Co.*, 808 F.2d 271 (3rd Cir.1986), the Third Circuit held that an employee's invocation of the privilege was admissible against his employer, and in *Cerro Gordo Charity v. Fireman's Fund American Life Insurance*, 819 F.2d 1471 (8th Cir.1987), the Eighth Circuit held that the Fifth Amendment invocation of a controlling member of a charity was admissible against that charity, finding the witness stood in the same position as the non-party ex-employees in *RAD Services* and *Brink's*.

None of these cases set down a bright-line rule allowing the admission of an employee's fifth amendment invocation. Indeed, the de-

cisions carefully state that these questions should be considered on a case-by-case basis. *See Brink's,* at 708, 710 (rejecting "a bright line rule against drawing inferences from a failure to testify in the context of civil cases," and affirming admission of employees' claims of privilege "under the circumstances of this case"); *RAD Services,* 808 F.2d at 277 ("admission of evidence of a non-party's invocation of the Fifth Amendment privilege is not *per se* reversible error."); *Cerro Gordo,* 819 F.2d at 1481 (refusing to announce a blanket rule, "preferring instead to consider these questions on a case-by-case basis.").

The present and former employees in *Brink's* who invoked their Fifth Amendment privilege were directly involved in the dishonest acts which underlay the City's counterclaim against the employer. In the case at bar, the non-party witnesses are local union business agents, District Council delegates, officers and employees of the District Council, and officers of local unions. The questions that have or are likely to provoke these individuals' resort to the Fifth Amendment go directly to acts of corruption charged by the government against the District Council. Accordingly, while the *Brink's* majority acknowledges that "[t]he propriety of calling witnesses who intend to assert a Fifth Amendment privilege not to testify poses a difficult question," *id.* at 708, the case nonetheless stands as square authority for drawing an adverse inference against the District Council in this civil case, assuming that the individuals in question bear a sufficiently close relationship to the District Council to have their refusals to testify qualify as vicarious admissions of the Council. In that regard, the fact that invokers of the privilege may not presently be employees or agents of the Council does not necessarily bar the drawing of the inference. *Brink's* at 710. District Council denies that these individuals may fairly be regarded as its employees or agents. That is an issue for trial.

█ The government argues in the alternative that these individuals were co-conspirators of the defendants, so that their refusals to testify justify adverse inferences against all members of the conspiracy. The argument is conceptually close to adverse infer-

ence by reason of employment or agency, since co-conspirators are generally said to act as agents for each other. Again, the fairness of taxing a party with a non-party's conduct depends upon the relationships between them, here the alleged conspiratorial relationship. While the government cites *United States v. Local 560, International Brotherhood of Teamsters,* 780 F.2d 267 (3rd Cir. 1985), *cert. denied,* 476 U.S. 1140, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986), in that case the Third Circuit held that the trial judge erred in drawing a negative inference against the party because independent evidence did not sufficiently establish the relationship. *Id.* at 292 n. 32. The court reached a different conclusion in *Aetna Casualty & Surety Co. v. Rodco Autobody,* 138 F.R.D. 328, 339 and n. 22 (D.Mass.1991), where the evidence showed that the non-party refusing to testify participated in the fraudulent scheme alleged. I agree with the government in principle that the refusal to testify by a proven co-conspirator may justify an adverse inference against other conspirators. Whether the proof at trial will support the inference remains to be seen.

District Council relies on a statement in *Brenner, supra,* at 454 n. 7, that "since King was a non-party witness, no adverse inference against appellees could have been drawn from his refusal to testify." *Brenner* antedates *Brink's.* Neither the *Brink's* majority nor the dissent refer to *Brenner.* I regard *Brink's* as declaring the present state of the law in this circuit, and endeavored to follow it.

IV. *Testimony of Harvey Tuerack, Salvatore Gravano and Armand Valenzi*

In opposing District Council's motion for summary judgment, the Government submitted declarations from Harvey Tuerack, Salvatore Gravano and Armand Valenzi. District Council moves to strike those declarations, and preclude the testimony of these witnesses at trial.

A. *Harvey Tuerack*

█ District Council contends that the Court should not consider the testimony of Harvey Tuerack, a Department of Labor

agent. District Council claims that it never deposed Agent Tuerack, relying on the Government's representation that almost any testimony Tuerack could offer would be protected by the work-product privilege. Having barred District Council from obtaining this discovery, District Council argues, the Government should not be permitted to proffer his testimony.

The Government denies that it ever represented to District Council that Tuerack's testimony would consist solely of work-product. The record supports that position.

The work-product issue apparently arose during the deposition of Special Agent Karen Worsham of the FBI, when Government counsel directed Worsham not to answer certain questions which sought the Government's work-product. District Council then moved to compel Worsham's testimony over the Government's work-product objections.

While that motion was pending before Magistrate Judge Katz, District Council noticed the depositions of several other agents, including Agent Tuerack. The Government sought to defer those depositions until Magistrate Judge Katz reached a decision on the work-product issue, arguing that "to the extent the District Council intends to pursue with these witnesses lines of inquiry similar to those pursued with Agent Karen Worsham, the same workproduct issues will arise." Letter from AUSA Zaccaro to Jed Rakoff, dated April 2, 1992, at 1–2. District Council resisted this delay, arguing that "the Government had never represented that the *only* relevant knowledge in these agents' possession is [workproduct]." Letter from Jed Rakoff to Magistrate Judge Katz, dated April 20, 1992, at 3, *.

The subject of Agent Tuerack's deposition was raised at a discovery conference before Magistrate Judge Katz on August 10, 1992.[2] District Council proffered a list of uncompleted depositions, which included that of Agent Tuerack. The Government noted that some of the depositions on District Council's list would be unnecessary if Judge Katz denied the motion to compel. The Government expressed its expectation, however, that Agent Tuerack's deposition would go forward whatever the outcome of the motion to compel: "As for Mr. Garay and Mr. Tuerack, they may have some knowledge outside of work-product. But those would be I think not lengthy depositions." August 10, 1992 Tr. at 63–64.

Indeed, District Council subsequently noticed Agent Tuerack's deposition for October 16, 1992. Apparently, that deposition did not go forward.

There is no support in the record for District Council's contention that the Government made any misrepresentations to the effect that Agent Tuerack's testimony would consist entirely of work-product. Whatever District Council's reasons for not deposing Agent Tuerack, the blame cannot be laid at the Government's door.

■ In its reply papers, District Council raises an additional ground for precluding Agent Tuerack's testimony. It alleges that the Government never identified Agent Tuerack as a person with knowledge. Whether or not Agent Tuerack's name was inadvertently omitted from a list of persons with knowledge, the Court has no doubt that this error did not work any prejudice on the defendants. District Council was well aware that Agent Tuerack possessed knowledge, as evidenced by the fact that it noticed his deposition a number of times, and mentioned the need to depose him at the August 10, 1992 discovery conference.

District Council's motion to strike the declaration of Agent Tuerack and preclude his testimony at trial is denied.

### B. *Salvatore Gravano*

■ District Council also seeks to preclude the testimony of Salvatore Gravano, on the ground that the Government asserted that Gravano would not testify in this matter.

In September 1992, the District Council subpoenaed Gravano for deposition. The Government sought to prevent the deposition, and represented to the Court that it had no intention of calling Gravano as a witness

---

2. District Council's motion to compel was still pending before Magistrate Judge Katz.

at trial. Nonetheless, the District Council moved to compel his deposition.

At a discovery conference on November 10, 1992, Magistrate Judge Katz ordered that the deposition go forward, but limited the scope of questioning to areas relevant to this litigation. Counsel for the Government then advised the Court that "if the deposition of Gravano does go forward, I would like to make sure that there is no misunderstanding that the government will reserve the right to call Gravano as a witness in the case." November 10, 1992 Tr. at 24–27.

Counsel for defendant Devine expressed concern that the limited scope of deposition could hinder defendants in attacking Gravano's credibility should he testify at trial. Magistrate Judge Katz directed the defendants to proceed on the assumption that Gravano would not be a witness at trial, and advised the defendants that if the Government did elect to call him, they could apply to Judge Haight for greater latitude on cross-examination.

The record is clear that the Government reserved its right to call Gravano prior to his deposition. The District Council cannot rely on a position the Government took earlier that works no prejudice on it. The Government may call Gravano as a witness. In the event it chooses to do so, the defendants may apply to the Court for additional latitude on cross-examination.

### C. *Armand Valenzi*

■ The District Council seeks to preclude the testimony of Armand Valenzi on the ground that the Government deliberately withheld Valenzi's address, effectively precluding the District Council from deposing him. The District Council charges that its interrogatories requested the names and addresses of all witnesses with relevant knowledge of the allegations made in the supplemental complaint, and while the response included Valenzi's name, it did not include his address. District Council alleges that it made a thorough and diligent effort to locate Valenzi, and then reasonably relied on the fact that the Government did not know how to locate him either. Having misled the defendants as to Valenzi's whereabouts, District Council contends that the Government should be precluded from calling him as a witness at trial.

The Government contends that the reason Valenzi's address was not included in the interrogatory response was because it was unknown. The Government reached Valenzi through his attorney, whose name was provided to District Council in the course of discovery. More importantly, the Government challenges the District Council's assertion that it diligently tried to locate Valenzi. Despite the fact that District Council often sought the Government's assistance in locating witnesses, it never advised the Government that it was having any difficulty locating Valenzi.

The District Council's failure to seek Government assistance in locating Valenzi is striking in light of the fact that it frequently contacted the Government for that purpose. And despite the fact that Valenzi's attorney has agreed to accept a deposition subpoena on behalf of his client, District Council has not tried to notice Valenzi's deposition. On that record, there is simply no basis to preclude Valenzi from testifying at trial.

It is SO ORDERED.