**UNITED STATES of America, Plaintiff,**

v.

**Mark M. JACKSON, and Robert Martinez, Jr., Defendants.**

**No. 94–40001–01/02–SAC.**

United States District Court, D.Kansas.

Nov. 7, 1994.

Thomas J. Bath, Jr., James L. Eisenbrandt, Bryan Cave, Overland Park, KS, for Mark M. Jackson.

Thomas M. Bradshaw, Daniel O. Herrington, Armstrong, Teasdale, Schlafly & Davis, Kansas City, MO, for Robert Martinez, Jr.

Tanya J. Treadway, Kansas City, KS, Richard L. Hathaway, Office of U.S. Atty., Topeka, KS, for U.S.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on three post-trial motions. The defendant Mark M. Jackson ("Jackson") moves for a new trial (Dk. 187) and for dismissal based on variance (Dk. 189). The defendant Robert Martinez, Jr. ("Martinez") moves for a new trial (Dk. 193). The government has filed a response in opposition. For the reasons set out below, the court denies the defendant's motions.

### Background

On January 5, 1994, a grand jury returned a thirty-two count indictment[1] against the defendants for their association and conduct with Parkview Hospital (Parkview), a private for profit psychiatric hospital in Topeka, Kansas. The defendant Mark Jackson had been an administrator at Parkview, and the defendant Robert Martinez had been a marketing representative with Parkview. The indictment alleged that the defendants bribed Louis Albert Garcia ("Garcia"), an employee assistance counselor with the United States Postal Service, to refer patients to Parkview. It further alleged that between approximately November of 1990 and January of 1992, the defendants paid Garcia $3,000 monthly and Garcia referred forty-three patients to Parkview.

Count one charges the defendants with conspiring to defraud the United States of the faithful services of its employee Louis Garcia, in violation of 18 U.S.C. § 371. Counts two through sixteen of the superseding indictment charge the defendants with bribery of Garcia in giving something of value in order to influence Garcia's official acts, in violation of 18 U.S.C. § 201(b)(1)(A). Counts seventeen through thirty-one of the superseding indictment charge the defendants with aiding and abetting Louis Garcia in supplementation of his federal salary, in violation of 18 U.S.C. §§ 2 and 209. Count thirty-two of the superseding indictment charges the defendants with conspiring to obstruct and impede a federal grand jury investigation, in violation of 18 U.S.C. §§ 371 and 1503.

After a two-week trial with thirty-seven witnesses, the case was submitted to the jury. The jury deliberated for approximately six hours spread over two days. On August 22, 1994, the jury returned a verdict finding both defendants guilty on the first thirty-one counts. The court released both defendants on secured bonds pending sentencing.

### Standards for Motion for New Trial

■ A court may grant the defendant a new trial "if required in the interest of justice." Fed.R.Crim.P. 33. Courts view motions for new trial with disfavor and grant them only with great caution. *United States v. Chatman,* 994 F.2d 1510, 1518 (10th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 230, 126 L.Ed.2d 185 (1993); *United States v. Leeseberg,* 767 F.Supp. 1091, 1093 (D.Kan.1991). The defendant has the burden of proving the necessity of a new trial. *United States v. Davis,* 15 F.3d 526, 531 (6th Cir.1994); *United States v. Cooley,* 787 F.Supp. 977, 984 (D.Kan.1992), *vacated on other grounds,* 1 F.3d 985 (10th Cir.1993). For purposes of this case, the relevant rule is that a new trial should be granted upon "[a]ny error of sufficient magnitude to require reversal on appeal." 3 Charles A. Wright, *Federal Practice and Procedure:* Criminal 2d § 556 (1982); *see United States v. Stiner,* 765 F.Supp. 663, 664 (D.Kan.1991), *aff'd,* 952 F.2d 1401 (10th Cir.1992) (Table); *United States v. Suntar Roofing, Inc.,* 709 F.Supp. 1526, 1530 (D.Kan.1989), *aff'd,* 897 F.2d 469 (10th Cir.1990).

### Defendants' Motions for New Trial (Dks. 187 and 193)

The defendant Jackson asserts the trial court erred in seventeen respects. The de-

---

1. On May 4, 1994, a grand jury returned a superseding indictment. The prosecution sought this superseding indictment in order to improve and refine the charging language, to cure some of the legal deficiencies that had been advanced by the defendants, and to change the legal theory alleged in count thirty-two.

fendant Martinez asserts all of the same errors except for four. The government correctly observes that most of these asserted errors were previously briefed by the parties and ruled upon by the court in one or more written orders. On those arguments that have been repeated, the court would have cause to simply dismiss them as raising nothing new and affirm its earlier rulings. To revisit rulings in the absence of new arguments would be a waste of judicial resources. For the most part, the defendants rely on conclusory arguments and offer little in additional authority or circumstances. Still, the court believes the issues are serious enough to require further consideration of their merit. For the ease of reference, the court has grouped the asserted errors by common subject or theme.

## A. *Charter by the Sea Hospital*

Louis Garcia testified that after the defendants left Parkview Hospital in Topeka, Kansas, they went to work for Charter by the Sea Hospital in St. Simon's Island, Georgia. Garcia said that Martinez called him from St. Simon's asking him to visit the facility and discuss with them the referral of postal employees. On two occasions in August and September of 1992, Garcia visited St. Simon's and his travel and lodging expenses were paid by Charter by the Sea. Garcia testified that on his visits they discussed his referral of patients in exchange for compensation through alternative channels, such as the hospital's sponsorship of functions conducted by organizations with which Garcia was associated. Garcia testified that he referred patients to Charter by the Sea and that the hospital paid the expenses for a meeting he arranged for the Ethnic and Cultural Concerns Committee for the Employee Assistance Professionals Association. At the conclusion of Garcia's testimony on this subject, the court gave a general limiting instruction pursuant to Rule 404(b) of the Federal Rules of Evidence. The instruction informed the jury, in part, "that this evidence was offered for the limited purpose of showing the motive, intent, plan, absence of mistake, if any, of the defendants with respect to the offenses charged." (Dk. 152 at 201).

Unaccompanied by substantive arguments, the defendants say this evidence was introduced without a proper foundation, without a specified proper purpose, and without sufficient notice under Rule 404(b). The court finds no merit in any of these contentions. First, the evidence does not exceed the scope of the government's 404(b) notice. The testimony was relevant in proving each of the limited purposes identified in the jury instruction. In particular, it goes to show the defendants courted and compensated Garcia not for his consulting and marketing skills but for his referral of patients. The defendants point to the fact that Garcia earlier gave a statement to postal inspectors denying any agreement for referring patients to Charter by the Sea. The defendants argue that Garcia's contrary testimony was unreliable and uncorroborated; thus, it should not have been admitted. Unlike *United States v. Shepherd,* 739 F.2d 510, 512–13 (10th Cir.1984), which the defendants cite as authority, the 404(b) testimony here is corroborated. Garcia's testimony about the arrangement at Charter by the Sea is evidenced by other than his testimony. In particular, Garcia visited St. Simon's Island on two occasions, Garcia referred patients to Charter by the Sea, and Garcia received a check from Charter by the Sea covering expenses for a committee meeting arranged by him.

The defendants' last argument on this subject is that the court's final jury instruction based on Rule 404(b) failed to specify the evidence to which the instruction applied. The only 404(b) evidence admitted was the Charter by the Sea arrangement. The only time the court gave the Rule 404(b) instruction during the presentation of evidence was immediately after Garcia's testimony about Charter by the Sea. Based on these circumstances, there is little chance of the jury being confused about what evidence was affected by the court's final jury instruction on Rule 404(b). "A defendant is not entitled to 'specific wording of instructions.'" *United States v. McGuire,* 27 F.3d 457, 462 (10th Cir.1994) (quoting *United States v. Bryant,* 892 F.2d 1466, 1468 (10th Cir.1989), *cert. denied,* 496 U.S. 939, 110 S.Ct. 3220, 110

L.Ed.2d 667 (1990)). Viewed as a whole, the instructions are an accurate statement of the applicable law. Assuming there is error in not identifying the single piece of 404(b) evidence, the court is not convinced it is prejudicial when viewed in light of the entire record. See *United States v. Self,* 2 F.3d 1071, 1089 (10th Cir.1993).

### B. *Limiting Cross–Examination of Louis Garcia*

The defendants' cross-examination of Garcia consumed nearly two full days of trial; yet, they argue a meaningful opportunity for cross-examination was denied them. Specifically, they were not allowed to ask Garcia about sentence guideline computations in his presentence report and about his depressive order evidenced in Garcia's own psychiatric records.

■ The court will not repeat what it has said on the presentence report in prior written orders. At trial, the defendants effectively cross-examined Garcia about the plea agreement and the five-year maximum sentence he faced on each count. The defendants even stacked the five-year maximums and cross-examined Garcia about a potential seventy-five year sentence. This examination provided the defendants with a full and fair opportunity to expose infirmities in Garcia's credibility without unduly confusing the jury with sentencing guideline calculations. The presentence report does not disclose Garcia's possible sentence in the event the government files a motion for downward departure based on Garcia's substantial assistance. The report simply recites the terms of the plea agreement on substantial assistance. Nothing in the presentence report reveals that Garcia personally had been provided a copy of the report or that he was aware of its contents. As for impeaching Garcia on whether he knew what had been recommended as his possible guideline sentence, the presentence report would not have helped the defendants any more than Garcia's motion for extension of time to file objections to presentence report filed of record in *United States v. Garcia,* No. 93–40035–01 on February 22, 1994. The defendants' lack of access to Garcia's presentence report did not interfere with their ability to cross-examine him.

In its prior orders, the court fully discussed the relevant law regarding a defendant's access to a government witness's psychiatric records. The court believes its ruling denying access is consistent with the law cited in its orders and in the parties' briefs. It should be noted that the court allowed the defendants to ask Garcia what effect, if any, he believes his psychiatric conditions may have had or still have upon his ability to perceive, recall or testify about the events in question. The defendants did not pursue this line of examination and so chose not to alert the jury to Garcia's psychiatric condition.

■ Even if the court erred in not providing the defendants with access to these psychiatric records, the court considers the error harmless. While Garcia's testimony was central to the government's case, much of what Garcia said was corroborated by other evidence. The most significant other evidence is the fact that he was paid $3,000 a month pursuant to a marketing and consulting contract and that this contract, as shown by other evidence including the parties' actions under it, functioned much like a pretext or scheme for hiding payments to Garcia in exchange for forty-three referrals from Texas. During cross-examination, the defendants extensively tested Garcia's testimony and effectively impeached him on several more obvious and significant motives. The court's earlier orders discussed the limited value of what was found in the sealed psychiatric records. Based on all these factors, the court believes beyond a reasonable doubt that the error was harmless. See *United States v. DeSoto,* 950 F.2d 626, 630–31 (10th Cir.1991).

### C. *Restricted the Defendants' Presentation of Evidence*

■ The admission of evidence is a matter committed to the trial court's discretion. *United States v. Fingado,* 934 F.2d 1163, 1164 (10th Cir.), *cert. denied,* 502 U.S. 916, 112 S.Ct. 320, 116 L.Ed.2d 262 (1991). The exclusion of evidence is reversible error only when " 'the evidence is so significant that it

results in "actual prejudice" because it has a "substantial and injurious effect or influence in determining the jury's verdict." ' " *United States v. Payne,* 978 F.2d 1177, 1181 (10th Cir.1992) (quoting *United States v. Fingado,* 934 F.2d at 1164 (quoting in turn *United States v. Vreeken,* 803 F.2d 1085, 1090 (10th Cir.1986), *cert. denied,* 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987))), *cert. denied,* — U.S. —, 113 S.Ct. 2441, 124 L.Ed.2d 659 (1993).

■ The defendants assert the court erred in not allowing their witness, Larry Gomez, testify about Garcia's work with Gomez at the Alcohol Rehabilitation Council, Garcia's efforts to establish a consulting business in 1985, and Garcia representing to Gomez that he could do outside consulting work. Contrary to what the defendants' advance, this testimony is not particularly probative in proving whether Garcia told Martinez in 1990 or 1991 that he could lawfully provide consulting services to Parkview Hospital on his own time. Whatever weight this evidence carried was substantially outweighed by the jury being confused over other dealings and conduct distinct in time and nature from the relation between Garcia and Parkview. Even if error, the exclusion of this evidence is not reversible error considering its marginal probative value.

■ The defendants next argue the court erred in not admitting certain tax information obtained from Garcia's accountant, Joseph Gardner. The court sustained the government's objections to these exhibits as lacking relevance, as being cumulative, and as lacking a proper foundation. The defendants were given wide range to examine Mr. Gardner about the matters about which he would have knowledge as Garcia's accountant and which were found among tax return information. Much of the additional information offered was already found on the tax return that had been admitted into evidence. The defendants made effective use of Garcia's tax returns to impeach him and to show bias. The exclusion of these cumulative documents is not prejudicial error.

■ The defendants argue the court committed reversible error in excluding testimony from defendant Martinez's wife, Rose Martinez, about what Louis Garcia had said on two occasions. The court sustained the government's objections to this testimony on at least two grounds; one of which was hearsay. The defendants failed at trial to show a foundation for an applicable hearsay exception. The defendants do not challenge now the hearsay ground. Since the same testimony came in through the defendant Martinez without an objection from the government, the defendants are not in a position to assert prejudicial error.

The defendants' final contention under this issue is that the court erred in not admitting a notebook prepared by Theresa Markowitz that contained all service provider contracts for Parkview Hospital. The defendants insist the notebook is relevant in showing the defendants' state of mind regarding the propriety of entering into a service provider contract with a referral source. The defendants offer no new arguments in their motion, so the court will stand by its earlier written order regarding the limited relevance of other service provider contracts.

D. *Alleged Errors in Admitting Certain Evidence and Allowing Certain Examination by the Government*

■ Evidentiary rulings are reversed only when "manifestly erroneous." *United States v. Simpson,* 7 F.3d 186, 188 (10th Cir.1993) (citation omitted). If the erroneous ruling "does not affect substantial rights and does not result in actual prejudice, the error is harmless and does not merit reversal." *Id.*

■ The defendants complain that the court erred in admitting Martinez's employment application for Bowling Green Hospital. They argue it should have been excluded as irrelevant and unduly prejudicial under Rule 403 and as evidence used in violation of Rule 608(b). Once Martinez testified, his credibility became an issue relevant for cross-examination. *United States v. Howard,* 774 F.2d 838, 845 (7th Cir.1985). Martinez suffered no appreciable unfair prejudice when the government impeached him with false answers on his employment application. "As to the alleged 608(b) violation, courts generally

hold that when a witness *admits* to having performed certain acts (in this case, [the defendant] Mehdi agreed to having filled out most of the documents in question) the prohibition against using extrinsic evidence is not applicable." *United States v. Zandi*, 769 F.2d 229, 236 (4th Cir.1985) (citing *Carter v. Hewitt*, 617 F.2d 961, 970 (3d Cir.1980)). Here the defendant Martinez admitted filling out the employment application. The government showed that Martinez had answered several material questions untruthfully on the employment application. If it was an error to admit the employment application, it was not prejudicial in that the government also properly cross-examined Martinez about his answers on the application. *See United States v. Zandi*, 769 F.2d at 237.

■■■■■■ The defendant Jackson argues the court erred in allowing the government to cross-examine the defendant Martinez concerning the facts surrounding his prior drug and fraud convictions. When a prior conviction is admitted against the defendant for impeachment purposes under Rule 609, the government generally "should not be allowed to 'add to the pungency of the impeachment' by inquiring about the details of an admitted crime." 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 609[05] at 609–66 (1991) (quoting McCormick, *Evidence* § 43 at 98 (1984)). Yet, if the defendant chooses to explain away the conviction, to minimize his guilt, or to otherwise describe the same criminal conduct in mitigating or favorable terms, then the door is proportionally opened for the government to cross-examine the defendant about the relevant facts regarding the conviction. *See United States v. Wolf*, 561 F.2d 1376, 1381 (10th Cir.1977).

Martinez took the stand and drew the sting of his prior criminal convictions. Besides describing the essential facts to the convictions, Martinez depicted himself as performing a peripheral role in the drug transaction and as acting upon a misunderstanding in the federal false statement case. The court found this testimony was enough to justify the government cross-examining him about facts relevant to his role and his understanding. The court does not appreci-

ate any likely prejudice to the defendant Jackson by reason of this cross-examination. Martinez' criminal conduct for which he was convicted occurred quite some time before he ever met the defendant Jackson. It was plainly presented at trial that Jackson was not involved with or linked to Martinez' criminal conduct in any way. The final jury instruction numbered 42 directed the jury to consider these prior convictions only in determining Martinez's credibility. There is no reasonable likelihood that Jackson was prejudiced when the government cross-examined Martinez about certain details of his prior convictions.

### E. Prosecutorial Misconduct

The defendants contend the court should have granted a mistrial because the government asked improper questions on two other occasions: The first time was when the government elicited prejudicial testimony from Oscar Perez that Martinez had said he had paid an employee assistance professional ("EAP") to obtain referrals. The other time was when the government asked Martinez if he had attended charting parties at Parkview where staff put false entries into the records.

If the defendant timely objects at trial to alleged prosecutorial misconduct, the following two-step analysis is used to review the misconduct claim:

"We must first determine whether the conduct was, in fact, improper. If the conduct was improper, we must then determine whether it warrants reversal. Prosecutorial misconduct does not warrant reversal if it was harmless error.... 'a non-constitutional error is harmless unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect.' ... In determining whether the misconduct affected the outcome, we consider: "the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case as a whole."

*United States v. Ellzey*, 936 F.2d 492, 498 (10th Cir.) (quoting *United States v. Lonedog*, 929 F.2d 568, 570 (10th Cir.) (citations omitted), *cert. denied*, 502 U.S. 854, 112 S.Ct. 164, 116 L.Ed.2d 129 (1991)), *cert. denied*,

502 U.S. 950, 112 S.Ct. 400, 116 L.Ed.2d 350 (1991).

As to the testimony from Oscar Perez, the court's analysis ends at step one, for the record is devoid of behavior that could reasonably be called misconduct. Oscar Perez' comment was unsolicited and was a surprise to the prosecution. All counsel agreed at the bench that the court should strike Perez' testimony, and the court did so. Perez' testimony concerning what Martinez said was far from clear, did not suggest that Martinez regularly paid EAPs for referrals, and did not relate directly to the particular facts charged in the indictment. The jury was instructed to consider only that evidence which has been admitted. Based on the record, the court finds no prejudicial error.

The government represents that based on its investigation it had a good faith basis to believe that Martinez participated in a deceptive practice at Parkview known as charting parties. According to the government, this was a proper subject for cross-examining the defendant pursuant to Rule 608(b). " ' To warrant a new trial prosecutorial misconduct in the form of improper comment or questioning "must be so pronounced and persistent that it permeated the entire atmosphere of the trial." ' " *United States v. Flake*, 746 F.2d 535, 542 (9th Cir.1984) (quoting *United States v. Lichenstein*, 610 F.2d 1272, 1281 (5th Cir.) (quoting in turn *United States v. Blevins* 555 F.2d 1236, 1240 (5th Cir.1977), *cert. denied*, 434 U.S. 1016, 98 S.Ct. 733, 54 L.Ed.2d 761 (1978)), *cert. denied*, 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980)), *cert. denied*, 469 U.S. 1225, 105 S.Ct. 1220, 84 L.Ed.2d 360 (1985). Assuming the question was improper, it fails to establish "pronounced and persistent" prejudicial misconduct. The final jury instruction numbered 54 informed the jury that "[t]he question of a lawyer is not to be considered by you as evidence." The court finds no basis for reversible error.

F. *Bowling Green*

The defendant Jackson devotes most of his attention to this evidence and uses it as the principal basis for his variance, severance, and jury instruction contentions. The court will discuss Jackson's arguments in separate sections and limit its analysis here to the admissibility of the Bowling Green evidence against Jackson.

Garcia testified that he first met Martinez at an annual alcohol and drug abuse institute in South Padre Island. Martinez was attending the institute as a marketing person on behalf of Bowling Green Hospital of Houston. At Martinez' invitation, Garcia visited Bowling Green Hospital and then referred patients there pursuant to an agreement with Martinez and the hospital administrator. Garcia testified that his agreement originally contemplated his involvement in a hispanic track program for Bowling Green but that the agreement later revealed itself to be little more than payments for referrals. According to Garcia, Martinez told him that he was being paid by Bowling Green to refer patients. Garcia said he was expected to refer three patients each month in exchange for $3500 and Bowling Green would waive or cover the referred patients' out-of-pocket and travel expenses and co-payments.

Shortly thereafter, Martinez left Bowling Green Hospital and went to work at Parkview Hospital in Topeka. Prior to his employment at Bowling Green, Martinez had worked in marketing at Baywood Hospital, where Jackson had been the hospital administrator. Martinez left Bowling Green when Jackson asked him to do marketing and consulting work at Parkview, a new hospital that Jackson was opening in Topeka. Around the same time, Martinez called Garcia and insisted that Garcia refer patients to Parkview. Martinez reminded Garcia of his prior arrangement at Bowling Green and of the likelihood that the postal inspectors would be interested in knowing about Garcia's dealings with Bowling Green. Martinez further revealed to Garcia that Jackson was aware of Garcia's prior arrangement with Bowling Green and that Jackson wanted the same arrangement for Parkview Hospital. Martinez explained that Jackson believed the referral payments could be disguised as a consulting contract with Parkview. In November of 1990, Garcia met with Jackson and Martinez and the details of their referral agreement were reached. Garcia was to re-

fer to at least three people a month in exchange for $3000 monthly payment, and Parkview would cover out-of-pocket expenses, including travel and lodging, and waive co-payments.

The court admitted the evidence concerning the Bowling Green arrangement as intrinsic evidence, not Rule 404(b) evidence. The court sees no reason to reiterate the ruling and rationale fully set out in two prior orders, but it will quote the following from its order of August 15, 1994, (Dk. 165):

> This evidence provides a background for the later acts charged in the indictment and is relevant in proving the formation and the purpose of the conspiracy, as well as, the significance of later acts associated with the defendant Jackson knowingly joining the conspiracy.... In short, this evidence offers a " 'chain of events explaining the context, motive and set-up of the crime [and is] linked in time and circumstances with the charged crime, ... [and] forms an integral and natural part of the account of the crime.' " *United States v. Lehder–Rivas,* 955 F.2d 1510, 1515–16 (11th Cir.) (quoting *United States v. Van Dorn,* 925 F.2d 1331, 1338 (11th Cir.1991)), *cert. denied,* [— U.S. —,] 113 S.Ct. 347 [121 L.Ed.2d 262] (1992).

(Dk. 165 at 7–8). The defendant Jackson disputes the evidence is intrinsic saying the conspiracy charged in count one had the limited object of referring patients to Parkview and had only two named conspirators, the defendants.

The defendant Jackson concedes the Bowling Green evidence has some probative value to him as linked by Garcia's testimony that Martinez said he had told Jackson of the Bowling Green arrangement.[2] Even so, Jackson argues the likelihood of the jury being confused over the details of the Bowling Green dealings and insists the real rea-

son for the government offering the evidence was only to bolster Garcia's credibility. The court finds little merit to Jackson's arguments. The Bowling Green dealings between Martinez and Garcia and Jackson's knowledge of the same plainly qualify as intrinsic evidence within established case law. *See, e.g., United States v. Davis,* 19 F.3d 166, 170–71 (5th Cir.1994); *United States v. Lehder–Rivas,* 955 F.2d 1510, 1515–16 (11th Cir. 1992); *cf. United States v. Ridlehuber,* 11 F.3d 516, 521–22 (5th Cir.1993).

That the Bowling Green dealings occurred outside the time period charged in count one or that they occurred when Jackson was not a member of the conspiracy does not make the evidence inadmissible. "[O]therwise relevant evidence is not rendered inadmissible because it relates to events falling outside the time frame alleged in an indictment." *United States v. Diaz,* 878 F.2d 608, 614 n. 2 (2nd Cir.), *cert. denied,* 493 U.S. 993, 110 S.Ct. 543, 107 L.Ed.2d 540 (1989). The relevance to Jackson is undeniable. Out of a motive to find patients for his fledgling hospital, Jackson hired Martinez confident that he had the sources which would provide immediate patients. Jackson came to know that Martinez had arranged at Bowling Green for Garcia to be paid for his referrals. Jackson knew the terms of this prior arrangement which Garcia apparently had found acceptable. It is also reasonable to infer that Jackson appreciated and expected that Martinez, by threatening to tell the postal inspectors, could insure Garcia's full participation in their immediate referrals for money scheme. In short, Jackson learned of Martinez's and Garcia's conspiracy of referrals for money and joined it so that patients would be referred now to Parkview.

The presentation of the Bowling Green evidence did not surprise either defendant. Nor did it create a situation where the jury might "have transferred guilt to the ... [de-

---

**2.** The court has explained in its order of August 15, 1994, (Dk. 165 at 9), why Garcia's testimony is admissible against Jackson as a co-conspirator's statement within Rule 801(d)(2)(E). Besides the authorities cited therein, the court would offer *United States v. Orena,* 32 F.3d 704, 713 (2nd Cir.1994), where the court said: "The conspiracy to which Rule 801(d)(2)(E) has reference with respect to particular testimony need

not be identical to the conspiracy charged in the indictment...." (citation omitted); *see United States v. District Council of New York City & Vicinity,* 832 F.Supp. 644, 647 (S.D.N.Y.1993) ("If the Government can avail itself of the co-conspirator exception even if no conspiracy whatsoever is alleged in its pleading, it may do so where the conspiracy justifying admission of the declarations is different from that alleged.").

fendant Jackson] based on 'evidence relating to conduct of a co-defendant in which the accused did not participate.'" *United States v. Allemand*, 34 F.3d 923, 930 (10th Cir.1994) (quoting *United States v. Cardall*, 885 F.2d 656, 670 (10th Cir.1989)). The Bowling Green evidence may have demonstrated a conspiracy between Martinez and Garcia, but it also established the background for the formation of the conspiracy with which the defendants were charged. "The jury did not convict the .... [the defendants] of an offense with which they were not charged by indictment, nor did it consider any evidence related only to a different conspiracy." *Allemand*, 34 F.3d at 930.

*G. Jury Instructions*

■ Jury instructions are examined as a whole in determining whether the jury was given an accurate statement of law or was misled. *United States v. Mullins*, 4 F.3d 898, 900 (10th Cir.1993); *United States v. Self*, 2 F.3d at 1089. The standard is not whether the instructions are without fault, *Mullins*, 4 F.3d at 900, " '"but whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine the issues." '" *United States v. Cardall*, 885 F.2d 656, 673 (10th Cir.1989) (quoting *Durflinger v. Artiles*, 727 F.2d 888, 895 (10th Cir.1984) (quoting in turn *Alloy Int'l Co. v. Hoover–NSK Bearing Co.*, 635 F.2d 1222, 1226–27 (7th Cir.1980))). Put another way, the instructions considered as a whole must "fairly, adequately, and correctly state the governing law and provide the jury with an ample understanding of the applicable principles of law and factual issues confronting them." *United States v. Denny*, 939 F.2d 1449, 1454 (10th Cir.1991) (citation omitted). Reversal of conviction is appropriate only for prejudicial error, that is, when there is substantial doubt that the jury was fairly guided. *United States v. Mullins*, 4 F.3d at 900; *United States v. Self*, 2 F.3d at 1089.

■ The defendants argue the court's conspiracy instructions numbered 14, 15, and 17 created a variance from the conspiracy charged in count one. The defendants read count one as charging a conspiracy having only themselves as the members, while the court's conspiracy instructions do not limit the possible members to them. The defendants conclude these instructions allowed the jury to consider the Bowling Green Hospital events as actions for which the jury could convict the defendants on count one. A plain reading of all the jury instructions shows the defendants' arguments lack substance.

■ The Fifth Amendment requires that a defendant only be tried on charges contained in an indictment issued by a grand jury. *United States v. Miller*, 471 U.S. 130, 135, 105 S.Ct. 1811, 1814–15, 85 L.Ed.2d 99 (1985). "A variance that broadens the indictment constitutes a constructive amendment and is reversible per se." *United States v. Wright*, 932 F.2d 868, 874 (10th Cir.), *cert. denied*, 502 U.S. 962, 112 S.Ct. 428, 116 L.Ed.2d 448 (1991). "[T]hough an indictment may be *narrowed*, ... it may not be *broadened*, so as to present the ... jury with more or different offenses than the grand jury charges." *United States v. Goines*, 988 F.2d 750, 774 (7th Cir.), *cert. denied*, ——— U.S. ———, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993). Amendments effected by jury instructions constitute plain error and are reversible per se. *United States v. Phillips*, 869 F.2d 1361, 1364 (10th Cir.1988), *cert. denied*, 490 U.S. 1069, 109 S.Ct. 2074, 104 L.Ed.2d 638 (1989).

■ The defendants cite no authority in support of their narrow reading of count one. Practical, not technical, considerations guide a court in interpreting an indictment. *United States v. Phillips*, 869 F.2d at 1364 (citing *United States v. Martin*, 783 F.2d 1449, 1452 (9th Cir.1986) ("Charging documents are tested by whether they apprise the defendant of what evidence he must be prepared to meet.... An indictment should be read in its entirety construed according to common sense and interpreted to include facts which are necessarily implied.")). The court notes, as it did during the jury instruction conference, that count one repeatedly refers to Louis Garcia, describes the meetings and agreement between the defendants and Garcia, and refers to Garcia's actions pursuant to the conspiracy. These allegations prevent the defendants from reasonably saying they lacked notice of the govern-

ment's intention to argue and prove that Garcia was a member of the conspiracy charged in count one. Of some significance, is the absence of any rule that an indictment name all co-conspirators. *United States v. Mobile Materials, Inc.*, 871 F.2d 902, 910 (10th Cir.1989), *opinion supplemented on reh'g*, 881 F.2d 866 (10th Cir.1989), *cert. denied*, 493 U.S. 1043, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990); *see United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir.1991) ("A defendant may be indicted and convicted despite the names of his co-conspirators remaining unknown, as long as the government presents evidence to establish an agreement between two or more persons...." (citations omitted)). By its instructions, the court did not alter an essential element of the charged conspiracy or broaden the possible bases on which the defendants could be convicted.[3] Simply put, the final jury instructions did not constructively amend count one.

■ The defendants alternatively contest the court's conspiracy instructions on count one, specifically those numbered 14, 15 and 17, as being totally confusing when read in conjunction with the instruction numbered 44. The latter instruction provides:

> You have heard evidence that while Robert Martinez, Jr. was employed at Bowling Green Hospital in Houston, Texas, there were some dealings between him and Louis Garcia. You are instructed that the defendants are not charged with and are not on trial for any acts or conduct associated with these prior dealings at Bowling Green Hospital. Therefore, in determining whether the defendants are guilty or innocent, you are to consider only whether the defendants have or have not committed the acts charged in the superseding indictment.

The instruction plainly states that the Bowling Green events were admitted as evidence but that the defendants are on trial only for what is charged in the indictment and not for what happened at Bowling Green. The in-

struction does not describe the particular relevance of this evidence. The defendants argue the instruction is flawed for not informing the jury of the permissible uses of the Bowling Green evidence. The defendants never tendered an instruction that outlined the relevance of this intrinsic evidence. The court contemplated giving such an instruction and decided against it because of the difficulty in identifying all matters on which this evidence could be relevant without overemphasizing the weight or importance of the evidence. The instruction numbered 44 fairly and accurately states the law, adequately addresses the danger of the jury convicting the defendants for what occurred at Bowling Green, and avoids giving the jury a reason to single out this evidence as more important.

The defendants assert the effectiveness of instruction numbered 44 is undermined by the instructions numbered 15 and 17 which inform the jury about a person joining an ongoing conspiracy. The defendant Jackson argues the conspiracy instructions permit the jury to convict him for joining a conspiracy between Martinez and Garcia that allegedly existed at Bowling Green and thus convict him for what may have occurred at Bowling Green. This sweeping conclusion defies the court's repeated instructions that the defendants are to be convicted only for the crimes charged and only for the conspiracy charged. *See* Instruction Nos. 6, 7, 13, 14, 15, 16, 38, 41, and 44. The court readily agrees with the defendant Jackson that the Bowling Green evidence allowed the jury to find that Martinez and Garcia had prior dealings and that those dealings were the foundation on which the conspiracy as charged in count one was built. The court's instructions, however, did not allow the jury to convict the defendants for these prior dealings between Martinez and Garcia. The joinder instructions were necessary to the extent that the jury could have found that the conspiracy charged in count one first existed between Martinez and Garcia when Martinez called Garcia say-

3. This case is not like *United States v. Keller*, 916 F.2d 628, 632–36 (11th Cir.1990), *cert. denied*, 499 U.S. 978, 111 S.Ct. 1628, 113 L.Ed.2d 724 (1991), where the count at issue did "not contain any language indicating that anyone else was involved in the conspiracy." In that instance, the trial court's instructions allowed the jury to convict the defendant for conspiring with anyone when the indictment charged the defendant with conspiring only with the co-defendant.

ing that he had made a similar referral arrangement for Parkview. The jury also could have found from the evidence that Jackson did not join the conspiracy until he met with Garcia and struck the referral deal. The instructions when read as a whole are not misleading or confusing.

■ The defendants next attack the instruction numbered 24 which explains that a defendant does not commit bribery unless the gift or favor is made with the intent to influence official action in exchange for it. The defendants say the instruction is not a proper statement of the law and does not specify the particular *quid pro quo* element alleged in the indictment of three referrals per month for $3,000 per month. The defendants cite no authority for their arguments.

The instruction numbered 24 adequately covered the issues raised at trial. It also accurately states the law as found in *United States v. Johnson*, 621 F.2d 1073, 1076 (10th Cir.1980), and *United States v. Vap*, 852 F.2d 1249, 1255 (10th Cir.1988). The defendants' own proposed instruction on the *quid pro quo* element does not mention $3,000 for three referrals each month. There is no basis for finding that the jury was misled by the court's instruction numbered 24.

Again without citing any authority, the defendants argue another of the court's instructions is not a proper statement of the law. This time the instruction is numbered 25, and it identifies those defenses unavailable on a bribery charge. Contrary to the defendants' arguments, the instruction as given is consistent with established precedent. *United States v. Hsieh Hui Mei Chen*, 754 F.2d 817, 825 (9th Cir.), *cert. denied*, 471 U.S. 1139, 105 S.Ct. 2684, 86 L.Ed.2d 701 (1985); *United States v. Jannotti*, 673 F.2d 578, 673 (3rd Cir.), *cert. denied*, 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982); *United States v. Johnson*, 621 F.2d at 1076.

■ The defendants find fault with the court's instruction numbered 28 which explains aiding and abetting and allows the jury to convict the defendant upon finding: "that Louis Garcia willfully received an illegal salary supplementation in violation of 18 U.S.C. § 209 and that the defendant willfully

aided, abetted, counseled, commanded, induced or procured Louis Garcia's commission of this offense or willfully caused it to be done...." The defendants narrowly read the indictment as charging them only with aiding and abetting Louis Garcia's unlawful supplementation in violation of 18 U.S.C. § 2(a) and not with "willfully causing" Louis Garcia's actions in violation of 18 U.S.C. § 2(b). The defendants also contest whether the evidence was sufficient for a § 2(b) instruction. These arguments do not present any ground for reversible error.

■ "[T]he inclusion of an aiding and abetting charge to the jury will rarely, if ever, constructively amend an indictment because an aiding and abetting charge is arguably implicit in every indictment." *United States v. Mucciante*, 21 F.3d 1228, 1234 (2nd Cir.1994) (citing *United States v. Sabatino*, 943 F.2d 94, 99–100 (1st Cir.1991)), *cert. denied*, — U.S. —, 115 S.Ct. 361, 130 L.Ed.2d 315 (1994) (No. 94–5322). This is so, because the aiding and abetting statute does not punish conduct separate from the substantive crime already charged. *Id.* Thus, the well-established rule is that a trial court may instruct the jury on aiding and abetting even when the indictment does not expressly charge a violation of 18 U.S.C. § 2. *Mucciante*, 21 F.3d at 1235; *United States v. Pickens*, 465 F.2d 884, 885 (10th Cir.1972).

With that said, the court finds that the counts 17 through 31 of the indictment expressly charge the defendants with violating 18 U.S.C. § 2. The indictment refers to § 2 without mention of or limitation by subsections (a) or (b). The defendants lack any serious ground for arguing that the court constructively amended the indictment by instructing on both subsections under § 2. The defendants were put on notice and cannot claim surprise or prejudice.

The reference to "aided and abetted" in counts 17 through 31 of the indictment fairly encompasses both subsections to 18 U.S.C. § 2. Subsection (b) is simply a "variation" on the traditional notion of aiding and abetting found in subsection (a). *United States v. Motley*, 940 F.2d 1079, 1082 (7th Cir.1991). "The purpose of § 2 is to permit a person operating from behind the scenes to be con-

victed even though that person is not expressly prohibited by the substantive statute from engaging in the acts made criminal by Congress." *United States v. Walser,* 3 F.3d 380, 388 (11th Cir.1993) (citing in part and quoting S.Rep. No. 1020, 82nd Cong., 1st Sess.1951), *reprinted in* 1951 U.S.Code Cong. & Admin.Service 2578, 2583 (Section 2(b) was "intended to clarify and make certain the intent to punish aiders and bettors regardless of the fact that they may be incapable of committing the specific violation which they are charged to have aided and abetted. . . .")). The defendants bald assertion that the evidence did not support an instruction on subsection (b) is without merit. Absent any specific argument—and there is none—regarding how this charge affected their defenses, the court has no basis to find or assume unfair prejudice from this jury instruction.

 The defendants' last challenge to the jury instructions is again made without offering any legal authority in support. The court's instruction numbered 29 addresses the co-conspirator theory of liability of *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). The defendants first argue that this theory of liability was not charged in the indictment and, therefore, was not a proper matter for instruction. *Pinkerton* is simply a theory of proof or liability. An indictment need not "recite a government's theory of proof, which is what the *Pinkerton* theory is." *United States v. Edmond,* 924 F.2d 261, 269 (D.C.Cir.), *cert. denied,* 502 U.S. 838, 112 S.Ct. 125, 116 L.Ed.2d 92 (1991). Even when the indictment is devoid of any conspiracy charge, the government can resort to *Pinkerton* liability and receive an instruction on it. *United States v. Macey,* 8 F.3d 462, 468 (7th Cir. 1993); *cf. United States v. Chairez,* 33 F.3d 823, 827 (7th Cir.1994); *Jacobs v. Scott,* 31 F.3d 1319, 1329 (5th Cir.1994). The lack of a *Pinkerton* charge did not preclude this court from giving the instruction numbered 29. The defendants also claim this instruction added to the confusion and tension already existing between the general conspiracy instructions and the instruction numbered 44. Having found no confusion to exist, the court finds nothing that the *Pinkerton* instruction

29 could have exacerbated. This instruction is an accurate statement of the law and did not unfairly prejudice the defendants.

### H. Severance

 The defendant Jackson renews his argument that a severance should have been granted because of the spillover effect from the evidence regarding Bowling Green and the defendant Martinez's prior drug and fraud convictions. A complaint of spillover effect from damaging or overwhelming evidence against a codefendant is not sufficient alone to justify a severance. *United States v. Cardall,* 885 F.2d at 668. It makes no difference that the government's case is stronger against one defendant than the other or that the defendants might have had a better chance of acquittal if tried separately. *United States v. Emmons,* 24 F.3d 1210, 1218 (10th Cir.1994). The defendant must make a strong showing of prejudice of the kind that is real, not just a mere possibility or hypothesis. *United States v. Youngpeter,* 986 F.2d 349, 353 (10th Cir.1993). Speculation about spillover does not overcome the dual presumption that a jury will abide by the court's instruction to consider each defendant separately and will capably sort out the evidence. *United States v. Lopez,* 6 F.3d 1281, 1286 (7th Cir.1993).

 The court believes the jury instructions scotched any spillover effect by telling the jury to consider the charges and evidence against each defendant individually, to consider Martinez's prior convictions only in evaluating Martinez's credibility, and to not allow the fact a defendant does not testify to weigh in their deliberations. *See* Instruction Nos. 5, 15, 38, 39 ad 42. It is proper to rely on a jury's ability to differentiate between defendants and among charges. *Emmons,* 24 F.3d at 1218. The defendant Jackson has not shown any real prejudice from this joint trial.

 The defendant Martinez presents a different severance argument. He maintains that if his trial had been severed and if the defendant Jackson had been tried first then the defendant Jackson would have testified in favor of Martinez. Specifically, Jackson

would have said that Martinez was not involved in the negotiating the terms of the Parkview–Garcia consulting agreement" and that he told Martinez that the Garcia consulting agreement was legal and was approved by counsel for National Medical Enterprises, Inc. Martinez believes Jackson's testimony is "extremely exculpatory," and without it, a specific trial right of his was compromised.

The Supreme Court recognized in *Zafiro v. United States*, —— U.S. ——, ——, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993), that "a defendant might suffer prejudice [from a joint trial] if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." In considering a claim to sever based on exculpatory evidence, the following factors are relevant:

> (1) the likelihood that the codefendant would in fact testify and waive his Fifth Amendment privilege at the severed trial; (2) the significance of the testimony to the theory of defense; (3) the exculpatory nature and effect of such testimony; (4) the likelihood that the testimony would be impeached; (5) the amount of prejudice caused by the absence of such testimony; (6) the effect of the severance on judicial economy; and (7) the timeliness of the motion.

*United States v. Powell*, 982 F.2d 1422, 1432–33 (10th Cir.1992) (citing *United States v. McConnell*, 749 F.2d 1441, 1445 (10th Cir. 1984)), *cert. denied*, —— U.S. ——, 113 S.Ct. 1356, 122 L.Ed.2d 736 (1993). These factors are weighed keeping in mind that " '[s]everance is a matter of discretion, not of right, and the defendant bears a heavy burden of demonstrating prejudice to his case.' " *United States v. Rogers*, 925 F.2d 1285, 1287 (10th Cir.) (quoting *United States v. Mabry*, 809 F.2d 671, 682 (10th Cir.), *cert. denied*, 484 U.S. 874, 108 S.Ct. 33, 98 L.Ed.2d 164 (1987)), *cert. denied*, 501 U.S. 1211, 111 S.Ct. 2812, 115 L.Ed.2d 985 (1991).

On the first factor, Martinez says that Jackson has represented to defense counsel that he would have testified on Martinez's behalf had he been tried separately first. In his supplemental brief, Martinez asks for a hearing at which he would present Jackson's testimony. Alternatively, he asks for leave to file Jackson's affidavit which would be obtained through Jackson's counsel once the counsel became available. Martinez served his supplemental brief on September 15, 1994. The court did not notice these motions for hearing or oral argument. Martinez has not filed any affidavit as of this date. Sentencing is scheduled for November 14, 1994. The court fairly assumes from these circumstances that Martinez will not be filing any affidavit from Jackson.

 The bare allegation that a co-defendant will testify is not enough. *United States v. Neal*, 27 F.3d 1035, 1047 (5th Cir. 1994); *United States v. Espinosa*, 771 F.2d 1382, 1408 (10th Cir.), *cert. denied*, 474 U.S. 1023, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985). "A defendant cannot establish the willingness of a co-defendant to testify on his behalf if the co-defendant's offer is 'further conditioned on the co-defendant's case being tried first.' " *Espinosa*, 771 F.2d at 1408 (quoting *United States v. Parodi*, 703 F.2d 768, 779 (4th Cir.1984)). The record simply fails to show an unconditional commitment from Jackson, prior to trial, to testify on behalf of Martinez. *See United States v. Rogers*, 925 F.2d at 1287. The first and last factors are not satisfied.

Assuming Jackson had testified as represented, it would have been significant in supporting Martinez's testimony and defense that he did not negotiate the terms of the consulting agreement and that he believed the agreement was lawful. The testimony also tends to exculpate Martinez to the extent he may have believed in good faith that the consulting agreement as written was lawful. Any prejudice suffered from not having this testimony, however, is outweighed by considerations of judicial administration and economy inherent in a conspiracy case of this nature.

Jackson's possible testimony would have been cumulative of Martinez's, impeached by Jackson's own involvement in the conspiracy, and weakened by Jackson's former and current relationship as a friend and associate of Martinez. The testimony also lacked a measure of credibility, because it would have been self-serving and would not have contra-

vened Jackson's own penal interest. *See United States v. DeSimone,* 660 F.2d 532, 540 (5th Cir.1981), *cert. denied,* 455 U.S. 1027, 102 S.Ct. 1732, 72 L.Ed.2d 149 (1982). Jackson's testimony would not have contradicted the substantial evidence that the consulting agreement was simply a scheme to disguise payments to Garcia for referrals. The consulting agreement on its face does not mention referrals. By convicting the defendants of bribery, the jury necessarily found that the consulting agreement was a ruse and that the defendants intended Garcia to be paid principally for his referral services. Consequently, it was not significant to the jury that Martinez did not negotiate or prepare the particular terms of the written consulting agreement or that he believed the written agreement on its face had been approved. Martinez was not prejudiced by the absence of Jackson's testimony. A severance would have frustrated the judicial efficiency and economy otherwise achieved in a joint trial of a conspiracy case. Rather than one trial, there would have been two almost identical trials involving the same witnesses and exhibits. " '[A]bsent a showing of clear prejudice, a joint trial of the defendants who are charged with a singer conspiracy in the same indictment is favored where proof of the charge is predicated upon the same evidence and alleged acts.' " *United States v. Flanagan,* 34 F.3d 949, 953 (10th Cir.1994) (quoting *United States v. Hack,* 782 F.2d 862, 871 (10th Cir.), *cert. denied,* 476 U.S. 1184, 106 S.Ct. 2921, 91 L.Ed.2d 549 (1986)). This court does not believe it abused its discretion in denying severance.

### Defendants' Motion for Dismissal for Variance (Dk. 190)

The defendants argue here that the government's evidence and the court's evidentiary rulings and instructions permitted the jury to convict them of a conspiracy much broader than the one charged in the superseding indictment. The defendants rehash the arguments that the Bowling Green evidence was not relevant to the conspiracy charged and that the conspiracy instructions allowed the jury to consider the events at Bowling Green as substantive evidence of their culpability. The defendants believe "there is a substantial likelihood that, like the

Court itself did when determining to admit Rule 801(d)(2)(E) testimony, the jury convicted defendants of being members of a broader conspiracy than the one alleged in the indictment...." (Dk. 190 at 6).

The Fifth Amendment is violated when a defendant is tried on charges different from those handed down by the grand jury. A "[v]ariance occurs when the evidence presented at trial establishes facts which are different from those alleged in the indictment." *United States v. Powell,* 982 F.2d at 1431 (citations omitted). A variance is reversible error when it constructively amends the indictment. *United States v. Wright,* 932 F.2d at 874. " 'A constructive amendment of an indictment "occurs when the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." ' " *United States v. Mills,* 29 F.3d 545, 548 (10th Cir. 1994) (quoting *United States v. Hornung,* 848 F.2d 1040, 1046 (10th Cir.1988) (quoting in turn *United States v. Hathaway,* 798 F.2d 902, 910 (6th Cir.1986)), *cert. denied,* 489 U.S. 1069, 109 S.Ct. 1349, 103 L.Ed.2d 817 (1989)). In contrast, a variance that does not rise to the level of a constructive amendment obligates the court to examine the entire record to determine whether the variance affected the substantial rights of the accused or whether it constituted harmless error. *Wright,* 932 F.2d at 874.

There is no need to repeat here what is said above about any variance caused by the jury instructions or about the relevance of the Bowling Green evidence. Despite the detailed evidence given on the Bowling Green dealings between Garcia and Martinez, the court believes there is no substantial likelihood that the defendants were convicted for what may have happened at Bowling Green. The court's instructions emphasized that the jury could convict the defendants only for those offenses charged in the superseding indictment. Instruction numbered 44 specifically informed the jury that the defendants

were not charged with and were not on trial for acts or conduct associated with Bowling Green. There is no reason to think that the jury ignored this plain instruction. The court's instructions adequately safeguarded the defendants from any prejudice associated with the Bowling Green evidence. *See Wright*, 932 F.2d at 874–75. Accordingly, the court finds no variance and no prejudice to the defendants' substantial rights.

IT IS THEREFORE ORDERED that the defendants' motions for new trial (Dks. 187 and 193) are denied;

IT IS FURTHER ORDERED that the defendants' motion for dismissal based on a variance (Dk. 189) is denied.